THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, *v.* OSCAR F. BECKWITH, APPELLANT.

*Murder in the first degree — direct proof of the death of the person alleged to be killed
required by section 181 of the Penal Code, as amended in 1882 — what evidence jus-
tifies the finding of a deliberate and premeditated design to effect death.*

Upon an appeal by the defendant from a judgment and sentence upon his con-
viction of murder in the first degree, it was claimed by his counsel that there
was no "direct proof" of the death of the person alleged to have been killed,
as was required by section 181 of the Penal Code, as amended in 1882.

*Held,* that as the homicide was committed before the Penal Code took effect, it
was competent to establish the identity of the dead body with the person
alleged to have been killed by presumptive proof; that is, by facts and cir-
cumstances tending to establish the identity, and sufficiently convincing to
exclude all reasonable doubt.

*It seems* that, even in a case which should be governed by section 181 of the Penal
Code, the requirement that the death of the person alleged to have been killed
should be established "by direct proof" should not be held to exclude points
and features of resemblance and circumstances tending to establish identity, as
the legislature could not have intended to require any higher proof than the
nature of the case would admit of. (Per LANDON, J.)

The evidence in this case considered and held to be sufficient to justify the
defendant's conviction of the "deliberate and premeditated design to effect"
the death of the person killed, as required by section 183 of the Penal Code,
to constitute murder in the first degree. (LEARNED, P. J., dissenting.)

APPEAL by the defendant from a judgment and sentence upon
his conviction of murder in the first degree at the Columbia County
Court of Oyer and Terminer, in February, 1887, for the killing of
Simon A. Vandercook, on the 10th day of January, 1882, at the
town of Austerlitz, in said county.

*L. F. Longley,* for the appellant.

*A. B. Gardenier,* district attorney, for the respondent.

LANDON, J.:

The prisoner was convicted of murder in the first degree. The
indictment charged that Simon A. Vandercook was the person
murdered. We are confronted upon the threshold of our examin-
ation with the objection that the statute requires direct proof of the
death of the person alleged to have been killed, and it is alleged
that there is no direct proof that Simon A. Vandercook, the person

here alleged to have been killed, is dead. There is direct proof that a man in many respects resembling Simon A. Vandercook is dead; there is circumstantial evidence sufficient to satisfy the mind beyond a reasonable doubt that such person was Simon A. Vander-cook; but the question remains, is there such direct proof of his death as the statute requires?

Section 181 of the Penal Code provides: " No person can be convicted of murder or manslaughter, unless the death of the person alleged to have been killed and the fact of killing by the defendant, as alleged, are each established as independent facts ; *the former by direct proof, and the latter* beyond a reasonable doubt." This section of the Penal Code, as enacted in 1881, did not contain the words which we have placed in *italics;* these were added by amendment in 1882.

This homicide was committed on the 10th day of January, 1882. The Penal Code, although passed July 26, 1881, did not, according to its last section (727), take effect until the 1st day of December, 1882, and when it took effect, section 181 had already been amended in the particular mentioned. But section 2 provides that " Any act or omission begun prior to that day (Dec. 1, 1882), may be *inquired of*, prosecuted and punished in the same manner as if this Code had not been passed." The identity of the dead body as the body of Vandercook might, therefore, be established as at common law.

The commissioners, in framing the section*as it was enacted in 1881, as we learn from the note appended to section 238 of their draft of the Penal Code as published in 1864, intended to state the rule as announced in *Ruloff's Case* (18 N. Y., 179). But it is manifest that they failed to do so. The rule in Ruloff's case was announced to be that a conviction for murder cannot be permitted " without direct proof of the death, or of the violence or other act of the defendant which is alleged to have produced death." This direct proof of the death was declared to be either the production of the dead body, or direct proof of the violence which caused the death and also caused the destruction or disappearance of the body so that it could not be produced, as in the case of sinking the body in the sea or consuming it by fire,

But section 181 really permitted proof of the death by circum-

* Section 181.—[REP.

stantial evidence; because circumstantial evidence, if sufficient and convincing, is competent, unless the statute forbids, to prove any fact beyond a reasonable doubt. It was obviously intended by the amendment of 1882 to make the section actually conform to the rule, with respect to death, which is announced in Ruloff's case. But the section as it now stands requires direct proof, not only of the death but also of the identification of the dead body found or produced with the person named in the indictment as the person killed.

Ruloff was convicted of the murder of his child. The dead body of his child was never found, and there was no direct evidence of his murderous violence to the child, or of his destruction of or secreting its body. But there was indirect or circumstantial evidence sufficient to satisfy the jury that he first murdered his child, placed it in a box and put iron enough in the box to make it sink in the water, and sunk it in the deep water of a lake. But the Court of Appeals reversed the conviction, holding that until direct proof of death was adduced, either by proof of finding the dead body or of the violence which caused its death, there was no occasion to inquire into the guilty agency of the prisoner.

The question of the identification of a dead body with the person named in the indictment as having been killed did not arise in the case. Such a question, however, did arise in *Dr. Webster's Case* (5 Cush., 295), and circumstantial evidence or indirect proof was resorted to to establish the identity of the nearly consumed remains of Parkman, the man alleged to have been murdered. Also in *People* v. *Wilson* (3 Park., 199); *Regina* v. *Cheverton* (2 Foster & F., 833). Greenleaf on Evidence (vol. 3) states the rule thus: " Sec. 133. But though it is necessary that the body of the deceased be satisfactorily identified, it is not necessary that this be proved by direct and positive evidence if the circumstances be such as to leave no reasonable doubt of the fact."

The identitity of the dead body of Simon A. Vandercook was, by the evidence adduced, established beyond a reasonable doubt. As the homicide was committed before the Penal Code took effect, we think it was competent to establish the identity by presumptive proof, that is by facts and circumstances tending to establish the identity, and sufficiently convincing to exclude all

reasonable doubt. But if the case should be governed by section 181 of the Penal Code, we do not think direct proof of identity should be held to exclude the points and features of resemblance, and circumstances tending to establish identity.

Here the head of the dead body had been consumed by fire. One of Vandercook's hands and one of his feet had peculiar marks as of some injury. The corresponding hand and foot of this dead body had also been consumed. Witnessess to whom the head and hand and foot were familiar, might well hesitate to testify directly "this is the body of Vandercook," and yet be able to give direct evidence of facts and circumstances amounting to what we usually call presumptive or circumstantial proof of identity, and which might be sufficiently convincing to satisfy the mind beyond all reasonable doubt. Indeed, one witness might give one fact, and another witness another, and the sum of the facts might make a much stronger case for the jury than some witnesses would need to enable them directly to say "this is the dead body of Vandercook." In whatever form stated, proof of identity in such cases is a matter of opinion based upon the witnesses' impression of the sameness of, or resemblance between the body seen, and his mental picture of the person alleged to have been killed. However directly he may testify, he gives but an opinion or impression induced by the facts upon his mind. When he says "this body is Vandercook" he means "I think it is; I believe it is;" and, strictly speaking, we have only direct proof of what he thinks and what he believes, not what the fact sought actually is. Hence we think when the legislature required direct proof of the identity, they could not have intended to require any higher proof than the nature of the case would admit of. Such proof was given in this case, and we think justified the finding of the fact of the identity.

It is objected that conceding that the defendant killed Vandercook, there is no evidence of the "deliberate and premeditated design to effect his death" required by the statute (Penal Code, § 183), or if any, not sufficient to justify a conviction of murder in the first degree.

The defendant lived alone in a small cabin on a mountain near what he supposed to be a gold mine which he had discovered. A company had been formed which obtained the title to the mine and

land about it. Vandercook became the manager of the mine, and the defendant either was, or supposed he was, excluded from any interest in it. Vandercook boarded in the family of Harrison Calkins, who lived about half a mile away. He had boarded there about three years before the homicide. Not much work had been done in the mine, but Vandercook cut off the wood from the lot and used the proceeds. The defendant became dissatisfied and had said to others, respecting Vandercook, that he would like to put him out of the way and suck his heart's blood, that he would like to get some one to do it; that anyone who knocked Vandercook over would get two or three hundred dollars. Some of these statements were repeatedly made. Vandercook was last seen alive about eleven o'clock in the forenoon on the 10th day of January, 1882, near the cabin of the defendant. Two days later some neighbors broke into this cabin and found there Vandercook's dead body, with the exception of his head, left hand, one foot, and part of his spinal column. The body had been cut into lengths or pieces apparently to fit them to be burned in the stove which was in the cabin. The examination of the ashes in the stove disclosed charred fragments of bones, apparently those of the missing parts of the body, also of woolen clothing. About four o'clock of the afternoon of the tenth of January, Beckwith called at the house of Mr. Calkins, and stated to Mrs. Calkins that Vandercook had gone away with a man from Green river to get up a stock company and would not be back until March. Mr. Calkins visited the defendant in his cabin that evening As he approached it he perceived an unusual odor as of something burning. When he entered the cabin he found the stove red hot, and heard something frying or crackling within it, and, upon asking defendant the cause, the defendant answered that he was burning pork rinds. Calkins went away and the defendant was not again seen in that neighborhood. It subsequently transpired that he fled to Canada and lived there under the name of White When he was arrested, some small articles, identified as Vandercook's, were found in his possession. The examination of the body of Vandercook disclosed a cut as of a knife entering the back beneath the shoulder blade and penetrating to the right lung. The physician testified that the ecchymosed condition of the lung indicated that Vandercook was alive when he received this cut, that it would greatly

shock and weaken, but would not instantly kill him. Two axes were found in the cabin, one much covered with flesh; on the head of the other were a few short gray hairs, Vandercook's hair was short and gray   The defendant, being in jail, stated to some visitors that Vandercook came to his cabin; that they had a tussle and Vandercook got the worst of it, that Vandercook got killed in his house; that he knew who did it, but he did not, that he got chopped up.   With respect to the defendant's statement it is proper to say that while the law requires all of it to be considered, it is powerless to compel a jury to believe the portions of it that they discredit.

Vandercook was a much larger, stronger and more active man than the defendant.   The jury obviously came to the conclusion that the threats of the defendant indicated his hostile feeling towards Vandercook, that the idea of killing him was often present to his mind, and was much deliberated upon by him.   That when Vandercook came to his cabin, whether an altercation or tussle occurred between them or not, the defendant took this opportunity to stab him in the back, that this wound was not sufficient to kill him instantly, and that he completed the homicide by striking him on the head with one of his axes   The other circumstances of the case no doubt strengthened their conviction of the capacity of the defendant to commit such a crime, and that he did it with premeditation and deliberation.   The statement of these circumstances seems to carry its own argument, and discussion is not useful.   We think the evidence justifies the verdict.

Harrison Calkins was a material witness on the part of the prosecution   On his cross-examination he testified that the relations between Vandercook and defendant were friendly so far as he knew. He was asked if he did not state to Dr. Hulette upon the highway, in the presence of Mrs  Hulette, that they (meaning himself and Vandercook), were not doing anything with the mine now, that that half crazy Beckwith was bothering them and they could not do anything with it.   He answered he did not remember any such remark.   Mrs  Hulette was called by the defendant's counsel and asked, in substance, if Calkins did not say so   Objection being made it was sustained, and we think properly   It was competent for the prisoner's counsel to prove by the witness, by way of discrediting him, that he had made a statement out of court contrary

: to his testimony in. If the witness should deny or testify that he
, did not remember making such contradictory statement, it would
·be competent to prove it by another witness. The prisoner's
counsel here did not seek to prove, either by the witness Calkins or
by Mrs·Hulette, any statement that Vandercook and defendant's
relations were unfriendly, but that Calkins had said that that half
´crazy Beckwith was bothering them and they could not do anything
·with the mine, a statement, which, if made, was expressive of
Calkin's estimate of defendant and his conduct, but not proving
that his sworn statement was opposed to his conversational one.

·   Whether Calkins had made the latter statement was immaterial,
·and not the proper subject of an issue. (*Carpenter* v. *Ward*, 30
·N. Y., 243.) The motion in arrest of judgment upon the ground
of irregularity does not appear to be supported by proof of the
irregularity alleged.

·  ·We think the conviction and judgment should be affirmed.

.  BOOKES, J., concurred.

LEARNED, P. J., (dissenting):
   Under the Revised Statutes murder was killing, perpetrated from
a premeditated design to effect death. Manslaughter in the first
degree, killing without a design to effect death, while, etc. Under
the Code, murder in the first degree is killing, when committed
from a deliberate and premeditated design to effect death; in the
second degree, when committed with a design to effect death, but
·without deliberation and premeditation. I cannot but think that
·the decisions of the courts have gone far to abolish the distinction
which the legislature intended to make by the emphatic. adding of
,"deliberation" to ´premeditation." When it is said that such
design must precede the killing by some appreciable space of time,
but the time need not be long, that the mind works with a. celerity
which it is impossible to measure and the like, it appears to me
that the distinction of the statute is practically ignored. An
opinion of a court which was reached with such celerity of the
·working mind that only a mere "appreciable space of time" should
intervene between the argument and the decision, would hardly be
called a deliberate and premeditated opinion. And in this very
case an act done by the prisoner was, on the former trial, pronounced

to be deliberate and premeditated, which was performed in so short a time that, if it had been any other act than that of taking human life, it would have been called hasty and not deliberate, suddenly conceived and not premeditated. And if the learned judges who affirmed the former conviction, had taken no more time to consider the case than the defendant took, according to the testimony, to do the act, they would not have thought that they were acting with deliberation and premeditation. Murder by poison or lying in wait is almost necessarily deliberate and premeditated. Murder committed during a quarrel or a fight is not, in any fair or reasonable meaning of the words. And if it be said that one may deliberate about an act and premeditate it in any such brief time as a second or two, a mere space of time than that can be appreciated, then it seems to me that the true meaning of words is disregarded. And I think that the decisions on the statute, as it now stands, show an unwillingness to accept its merciful and humane consideration for hasty and suddenly conceived crime. But we must take the decisions as they are, trusting that a jury, when they deliberate on their verdict, will understand the meaning of that word

In considering this case, I assume that Vandercook was killed; that he was killed in Beckwith's cabin and by Beckwith's hand; that Beckwith had at some previous time threatened to take Vandercook's life; I even assume that Beckwith's attempt to conceal the body and his flight are some evidence that he thought he had committed some crime. What is there in all these facts that is not as consistent with the theory that the crime was murder in the second degree or manslaughter in the first degree, as with the theory that the crime was murder in the first degree? Where is the proof of the deliberate or premeditated design for even one second before the killing? Where is the proof of the design to effect death at all? The blow from the knife was not immediately fatal, if at all. It might have been given with a design to kill, but without deliberation or premeditation. It might have been given in the heat of passion. What right have we to say that it was not so given? The fact that it was given upon the back does not show that it was not in the heat of passion. The previous threats showed bad feeling. And if there had been any proof that Beckwith had induced Vandercook to come to his cabin on the occasion, then it

might be said that such proof showed deliberation and premeditation. But nothing of this kind appears Vandercook may even have been an intruder and unwelcome He may have come to irritate and abuse Beckwith Indeed it is given in evidence by the prosecution that Beckwith said that Vandercook burst the door open and got hurt; that they had a tussle and Vandercook got the worst of it. Now there is nothing to contradict or discredit this statement of Beckwith, put in evidence by the prosecution

Undoubtedly, previous threats may qualify and give a character to the circumstances which surrounded the killing But in this case we do not know the circumstances. The killing may have been done in the heat of passion, without design to effect death, or even in self-defense, so that the threats (which really seem to have been idle talk) do not characterize any circumstances. If Beckwith had provided a weapon, if he had lain in wait, if he had sought Vandercook, then these threats would have had force. Two axes were found, one had hairs on it, the other flesh and blood. But it does not appear that these were used in killing Vandercook. The mutilated condition of the body sufficiently accounts for the appearance of the axes The mutilation was done after death I am unable to find, and I am not referred to any evidence tending to show, that Beckwith struck Vandercook, while living, a blow with an axe. In this respect the present case differs from the case as it was on the former trial Then evidence was given by Beckwith himself '' that he killed the deceased by the blow of an axe So it is stated by the Court of Appeals, and they say "the axe was wielded with a settled design to kill" And on this deliberate selection and use of this weapon the decision of that court largely rested. (*People* v *Beckwith*, 103 N. Y, 365.) No such evidence is now before us

This is a case in which there is danger that the feelings of the jury and of the court may be excited by the mutilation committed on the body of the deceased, evidently for the purpose of conceal ment. But the crime had been completed before this mutilation was done. The mutilation is shocking to our sensibility and to our respect for the dead, but it does not affect the degree of the crime. An attempt to conceal evidence is some indication of guilt; yet even a person conscious of innocence may fear the result of a trial

At any rate, the crime was done when Vandercook was killed. Whatever followed, however shocking, should not disturb our calm judgment, nor convict Beckwith of a crime greater in degree than the proof justifies We have no right, nor had the jury, to find premeditation and deliberation without evidence; and that evidence must show that the very act of killing was done with a deliberate and premeditated design to effect death. "An act co-existent with and inseparable from a sudden impulse, although premeditated, could not be deliberate, as when under sudden and great provocation one instantly, although intentionally, kills another " But the statute is not satisfied unless the intention was deliberated upon. (*Leighton* v *People*, 88 N Y., 117.) There must, then, be evidence on which the jury could find that Beckwith not only intended to kill, but deliberated on that intention I do not see such evidence in the case And here it must be noticed that the court charged the jury that, in proving the statement made by defendant as evidence of the killing of Vandercook by the defendant, the people are bound by defendant's narrative in the same statement of the fact that such killing occurred in a tussle, which followed Vandercook's breaking into the cabin, unless that circumstance is proved untrue by other proof; and further that, with the fresh provocation of Vandercook's breaking into the cabin, proved in this case, the jury have no right to find that the killing was upon any previous malice. The jury, therefore, was instructed to find that the killing was not of any previous malice, but occurred in a tussle which followed Vandercook's breaking into Beckwith's cabin They must then have found the deliberation and premeditation from something which happened between the time when Vandercook burst into the door and the time when he was killed As above remarked, there is no evidence of what took place then, except the fact of a stab with the knife

It seems to me that the judgment should be reversed, and a new trial granted upon the facts.

Judgment and conviction affirmed,