## RULOFF v. THE PEOPLE.

To warrant a conviction of murder there must be direct proof either of the death, as by the finding and identification of the corpse, or of criminal violence adequate to produce death and exerted in such a manner as to account for the disappearance of the body.

The *corpus delicti*, in murder, has two components, death as the result and the criminal agency of another as the means. It is only where there is direct proof of one that the other can be established by circumstantial evidence.

The rule of Lord HALE (2 *P. C.*, 290) forbidding a conviction of murder or manslaughter unless the fact be proved to be done or at least the body found dead, commented upon and affirmed.

WRIT OF ERROR to the Supreme Court. The appellant was indicted in Tompkins county for the murder of his infant child by various means—stabbing, choking, drowning, poisoning, &c., set forth in different counts. The indictmen was brought by *certiorari* into the Supreme Court, and, the venue having been changed, was tried at the Tioga Circuit in October, 1856, before Mr. Justice MASON. The prisoner having been convicted, moved for a new trial upon a bill of exceptions, which was denied, and having been sentenced at

general term in the sixth district, brought the case into this court by writ of error.   The -exceptions and facts material thereto are sufficiently stated in the following opinion.

*Francis M. Finch,* for the plaintiff in error.

*Daniel S. Dickinson,* for The People.

By the Court, JOHNSON, Ch. J.   At the opening of the trial the counsel for the prosecution, in answer to a question of the prisoner's counsel, stated that he did not propose to prove by any direct evidence that the infant daughter of the prisoner, with whose murder he was charged by the indictment, was dead or had been murdered, or that her dead body had ever been found or seen by any one, but that from the lapse of time since the child and her mother were last seen, and from other facts and circumstances, he should ask the jury to infer and presume and find that the infant daughter was dead and that she was murdered by the prisoner.   " The prisoner's counsel, on this, moved the court to stop the trial, for want of proof of the *corpus delicti;* that the rule laid down by Lord HALE, that no person should be convicted of murder or manslaughter unless the facts were proved to be done, or at least the body found dead," is the rule universally acted upon by our courts, and should never be departed from.   The judge reserved the question till the evidence should be closed.

The prosecution gave proof tending to show that the prisoner did not live happily with his wife; that his wife and infant daughter were seen alive and well on the evening of June 24, 1845, by a woman who lived across the road from Ruloff's house.   No person shows that either of them have been seen since.   The next day Ruloff borrowed a wagon from a neighbor and took into it a box from his own house, which the neighbor helped him to place in the wagon; he drove off with it — where, is not shown; on the following day he

returned with the wagon and box. It was shown that he had in his possession a ring which his wife had worn on the twenty-fourth, and a shawl and some other articles of her apparel; that he told stories as to her being at sundry places where she was proved not to have been, and generally conducted himself in such a way as to lead strongly to the inference that he was the author of whatever had happened to his wife and child, if anything had, in fact, happened to them. In the house clothes were found lying about in disorder, dishes unwashed, a skirt lying in a circle at the foot of the bed, and shoes, stockings and diapers. It was sworn that Ruloff had a cast iron mortar of twenty-five or thirty pounds weight, and flat irons, which on searching the house were not found. He absconded and was in Chicago early in August, under a false name; there said his wife and child had died six weeks before on the Illinois river, in Illinois, and left a box containing books, papers and articles of woman's apparel, which had belonged to Mrs. Ruloff, a paper on which were the words "Oh, that dreadful hour!" and a lock of light brown hair in another paper, labeled "A lock of [Harriet's or Mary's] hair;" the witness thought the word was "Harriet's."

At the close of the evidence, the prisoner's counsel renewed his motion, made at the opening of the cause, and insisted that, as it now appeared that no direct evidence of the death or the murder of the infant daughter had been given, no conviction for murder could be properly had or allowed, and that the jury should be so advised and instructed, and should be directed to find a verdict of not guilty. The judge refused so to advise, direct and instruct the jury, and to his refusal the prisoner's counsel excepted.

The judge then charged the jury. After explaining the legal definition of murder, and the legal presumption of innocence in favor of the prisoner, and the duty of the prosecution, before they could rightfully ask a conviction, not only to prove the alleged murder, but also to establish by

evidence the guilt of the prisoner beyond any reasonable doubt, he proceeded as follows: "The first branch of the case, the *corpus delicti*, as it is termed in the law, by which is meant the body of the crime, the fact that a murder has been committed, must be clearly and conclusively proved by the government. The *corpus delicti* is made up of two things: first, of certain facts forming the basis of the *corpus delicti*, by which is meant the fact that a human being has been killed; and secondly, the existence of criminal and human agency as the cause of the death. Upon this first branch of the case, the prisoner's counsel insists that it can only be proved by direct and positive evidence; that the government must prove the fact of death by witnesses who saw the killing, or at least the dead body must be found. It has been said by some judges, that a conviction for murder ought never to be permitted unless the killing was positively sworn to, or the dead body was found and identified. This, as a general proposition, is undoubtedly correct, but, like other general rules, has its exceptions. It may sometimes happen that the dead body cannot be produced, although the proof of death is clear and satisfactory. A strong case in illustration is that of a murder at sea, when the body is thrown overboard in a dark and stormy night, at a great distance from land or any vessel. Although the body cannot be found, nobody can doubt that the author of such crime is guilty of murder. In such a case, the law permits the jury to infer that death has ensued from the facts proved; the circumstances being such as to exclude the least, if not almost every probability, that such a person could have escaped with life; and yet there is a bare possibility in such a case that the person may have escaped with life.

"I am of opinion that the rule, as understood in this country, does not require the fact of death to be proved by positive and direct evidence in cases where the discovery of the body, after the crime, is impossible. In such cases the

fact may be established by circumstances, where the evidence is so strong and intense as to produce the full certainty of death. By the proof of a fact by presumptive evidence, we are to understand the proof of facts and circumstances from which the existence of such fact may be justly inferred. The facts and circumstances to establish the death in the case of murder, in the absence of any positive evidence, must be so strong and intense as to produce the full certainty of death, or, as Mr. WILLS says, 'the death may be inferred from such strong and unequivocal circumstances as render it morally certain, and leave no ground for reasonable doubt.' The government claim that they have proved the body of the crime, in the case under consideration, up to the strictest requirements of the rule. This is for you to determine. The determination of it involves the examination of all the facts and circumstances disclosed by the evidence in the case."

After, then, observing briefly upon some parts of the evidence, the judge concluded his charge by stating the rule that should govern them in their ultimate conclusion, as follows: "In regard to the first branch of the case, the establishment of the *corpus delicti*, the body of the crime, before you find it against the prisoner you must be satisfied from the evidence in the case that it is established by presumptive evidence of the most cogent and irresistible kind, that is, established by circumstances proved, so strong and intense as to produce the full certainty of death.

"In regard to the second branch of the case, by which we mean the traverse between the government and the prisoner as to the question of his guilty agency in the commission of the alleged murder; as to this question, the rule, is that the government are required, before they can claim a conviction, to prove by their evidence the guilt of the prisoner beyond any rational doubt. If, upon a full and fair consideration of all the evidence in the case, doubts remain in the minds of the jury, it is their duty to acquit. Upon this branch of

the case, the doubts, however, which require an acquittal should be rational doubts. They are not doubts which may arise in a speculative mind, after the reason and judgment are thoroughly convinced by the evidence in the cause."

The defendant's counsel excepted to so much and such parts of the charge and instructions given to the jury as submits to them to infer, presume and find, without direct proof, the death and the murder of the infant daughter of the defendant.

The question presented to us, therefore, is, whether there be a rule of law, in respect to the proof in cases of homicide, which does not permit a conviction without direct proof of the death, or of the violence or other act of the defendant which is alleged to have produced death.

If it be objected that such a rule may compel the acquittal of one whom the jury are satisfied is guilty, the answer is, that the rule, if it exists, must be regarded as part of the humane policy of the common law, which affirms that it is better that many guilty should escape than that one innocent should suffer; and that it may have its probable foundation in the idea that where direct proof is absent as to both the fact of death and of criminal violence capable of producing death, no evidence can rise to the degree of moral certainty that the individual is dead by criminal intervention, or even lead by direct inference to those results; and that where the fact of death is not certainly ascertained, all mere inculpatory moral evidence wants the key necessary for its satisfactory interpretation, and cannot be depended on to furnish more than probable results. It may be, also, that such a rule has some reference to the dangerous possibility that a general preconception of guilt, or a general excitement of popular feeling, may creep in to supply the place of evidence, if, upon other than direct proof of death or a cause of death, a jury are to be permitted, upon whatever evidence may be presented to them, competent on any part of the case, to pronounce a defendant guilty

I proceed, therefore, to consider whether any such rule is to be found in the common law.  Lord HALE says: "I would never convict any person of murder or manslaughter unless the fact were proved to be done, or at least the body found dead, for the sake of two cases—one mentioned in my Lord COKE's *P. C., cap.* 104, *p.* 232, a Warwickshire case; another, that happened in my remembrance, in Staffordshire, where A was long missing, and upon strong presumptions B was supposed to have murdered him, and to have consumed him to ashes in an oven, that he should not be found, whereupon B was indicted of murder, and convicted and executed, and within one year after A returned being, indeed, sent beyond sea by B, against his will, and so, though B justly deserved death, yet he was really not guilty of that offence for which he suffered." (2 *Hale's P. C.,* 290.) It forms part of the chapter in which he treats of "evidence requisite, or allowed by acts of parliament, and presumptive evidence."  Considering the law of evidence, first in treason, requiring two witnesses, then upon indictment for murder against the mother of a bastard child, where by act of parliament the mother of such a child, concealing its death, was to suffer as in murder, unless she proved by one witness that the child was born dead, and next the subject of presumptive evidence, he says: "In some cases presumptive evidences go far to prove a person guilty, though there be no express proof of the fact to be committed by him; but then it must be very warily pressed, for it is better five guilty persons should escape unpunished than one innocent person should die."  This observation he follows by a case illustrative of his meaning, where one was executed for stealing a horse, which was proved to have been stolen, the prisoner being found in possession of the horse, "a strong presumption that he stole him," and yet it afterwards appeared that another person stole the horse and that the prisoner's possession was innocent.  He proceeds: "I would never convict any person for stealing the

goods of a person unknown, merely because he would not give an account how he came by them, unless there were due proof made that a felony was committed of these goods." Then follows the passage first cited, which is the earliest statement of the doctrine for which the defendant contends

When this was written, a prisoner charged with murder or any inferior felony was neither allowed the advantage of sworn witnesses or the full aid of counsel, and it is therefore quite apparent upon the whole passage that Lord HALE was here stating, not what prudential principles ought to govern the action of individual jurors in weighing evidence, but what, acting as judge, and exercising the control which judges were then accustomed to exercise, he would govern them by.

The case cited in COKE was of an uncle who brought up his niece, whose heir at law he was. He correcting her on some occasion, she was heard to cry out, "Good uncle, kill me not," and afterwards disappeared and could not be found. He was arrested on suspicion, and, to avert this, produced as his niece another child of similar appearance. The imposition was detected, and he, being indicted, was on trial convicted on these circumstances, and executed. The niece afterwards made her appearance, and was proved to be the true child. Lord COKE reports this case, as he says, to the end that judges, in case of life and death, judge not too hastily on bare presumption.

In Hindmarsh's case (2 *Leach's Crown Law*, 569), the indictment for murder of a ship captain contained two counts, one for killing by beating, the other for drowning. The fact happened at sea; a witness proved that he was awakened at midnight by a violent noise; that on reaching the deck, he saw the prisoner take the captain up and throw him overboard into the sea, and that he was not seen or heard of afterwards. Another witness proved that the prisoner proposed to one Atkyns to kill the captain; and another proved that on the deck, near where the captain was seen, a billet of

wood was found, and that the deck and part of the prisoner's dress were stained with blood.  Garrow, of counsel for the prisoner, contended, citing the passage from HALE, that the prisoner was entitled to be acquitted for want of proof of the death, as he might have been picked up by some other ship.  He cited a case before Justice GOULD, where the mother and reputed father of a bastard child took it to the margin of a dock in Liverpool, stripped it and threw it in.  The body of the child was not afterwards seen; and as the tide ebbed and flowed in the dock, the judge, observing to the jury that the tide might have carried out the living infant, directed them to acquit him.  The court, which consisted of Sir JAMES MARRIOTT, Judge of Admiralty, Mr. Justice ASHURST, Baron HOTHAM, and others, admitted the general rule of law; and Mr. Justice ASHURST left it to the jury, on the evidence, to say whether the captain was not killed before his body was thrown into the sea. The jury found the fact to be so.  The case came afterwards before all the judges, who held the conviction to be right, and the prisoner was executed.

BLACKSTONE says (4 *Com.*, 358), all presumptive evidence of felony should be admitted cautiously, for the law holds that it is better that ten guilty persons escape than that one innocent suffer; and Sir MATTHEW HALE, in particular, lays down two rules most prudent and necessary to be observed: 1. Never to convict a man for stealing, &c.; and 2. Never to convict any person of murder or manslaughter, till at least the body be found dead.

In *Regina* v. *Hopkins* (8 *C. & P.*, 591), a woman was indicted for the murder of her illegitimate child.  It was born March twenty-third, and sent to a nurse, where it remained till April seven. when the prisoner took it away, stating an intention to go to her father's.  She was seen the next day at several times, the latest being at six in the evening, with the child in her arms on the way to her father's.  Between eight and nine she arrived there without the child.  The dead

body of a child was found on the thirteenth, in a river near the place where she was last seen with her child, which upon proof of its age and appearance was shown not to be her child. Lord ABINGER, after stating the particulars of this latter proof, added, "with respect to the child which really was the child of the prisoner, she cannot by law be called upon either to account for it or say where it is, unless there be evidence to show that her child is actually dead," and directed an acquittal.

In the case of Videtto (1 *Park. Cr. R.*, 609), WAL-WORTH, Circt. J., says: "One rule which ought never to be departed from is, that no one should be convicted of murder upon circumstantial evidence, unless the body of the person supposed to have been murdered has been found, or there be other clear and irresistible proof that such person is actually dead."

It does not appear that this direction was material on that trial, and it is cited only to show how constantly the doctrine has been received as clear and undisputed law.

In the case of Wilson (3 *Park. Cr. R.*, 207), the cook of the schooner Eudora was indicted for the murder of the captain upon Long Island Sound; after five months a body floated on shore, which the prosecution claimed was shown to be that of the murdered man. STRONG, J., who presided at the trial, charged the jury " that ordinarily there could be no conviction for murder until the body of the deceased was discovered. That there were several exceptions to the rule, however, as where the murder has been on the high seas, at a great distance from the shore, and the body had been thrown overboard, or where the body had been entirely consumed by fire, or so far that it was impossible to identify it. But, in the present case, the scene of the supposed tragedy was near the shore, and there was strong reason to suppose that if a murder had been committed, the body of the deceased would be discovered. The exception to the rule is therefore, inapplicable, and the jury must be satisfied that

the body discovered was that of the murdered captain, before they could convict the prisoner."

In Tawell's case ( *Wills' Cir. Ev.*, 3*d ed.*, 181 ), Baron PARKE told the jury that " the only fact which the law requires to be proved by direct and positive evidence is the death of the party by finding the body, or, when such proof is absolutely impossible, by circumstantial evidence leading closely to that result—as where a body was thrown overboard, far from land, when it is quite enough to prove that fact without producing the body."

These are the cases in which the rule contended for by the defendant has been recognized as the clearly acknowledged law regulating the production of evidence in cases of homicide. No case is to be found which has been determined the other way. That no more reported cases contain the rule, is to be accounted for on the ground that the doctrine has been universally acted on and acquiesced in, while it is equally certain that any case departing from the rule would not have escaped observation.

A great deal of strong general language has been used by judges in respect to the power of circumstantial evidence to afford sufficient ground to warrant convictions, and many instances of this have been cited and are relied on by the prosecution. Most of those expressions have been used, in answer to the position that circumstantial evidence ought not to be relied on to prove any part of the case for the prosecution. But I have not found any case in which a judge, speaking directly to the point here involved, has said that without direct evidence on either branch of the *corpus delicti* a conviction for murder could be allowed.

The cases contained in The Theory of Presumptive Proof, for a considerable time after its publication, formed the basis of repeated attacks upon the value of circumstantial evidence for any purpose of inculpation in criminal cases. It was to dispel this error that judges often had occasion, and sometimes took occasion, to vindicate its employment. But that

the general language thus employed was not intended, by those who used it, to conflict with the rule for which the defendant in this case contends, is fairly to be inferred.

In *Cowen & Hill's Notes to Phillips* (*vol.* 1, 394), after a review of the cases contained in The Theory of Presumptive Proof, and sustaining in the strongest manner the general value and importance of circumstantial evidence against the attacks upon it, as well those contained in the work mentioned as those founded upon the cases which that work first collected, the authors say : "In these cases of homicide, the precaution of Lord HALE seems to be enough for laying the foundation of circumstantial evidence — citing in terms the rule. A departure from this important suggestion, which is now universally acted upon, was a capital error in Miles' case, before cited from the above named work. The body being afterwards found, it plainly appeared that the death was accidental. The judge should have stopped the prosecution. In the two illustrative cases cited by HALE, one of the persons supposed to have been murdered was sent on a long sea voyage and the other had run away. The rule that the body must be found dead is adhered to with great strictness in the English courts."

No one was better qualified than Judge COWEN, both by long experience and great learning, to speak of what rules were universally acted on in the courts of England and of this country. It is quite plain, too, that his general remarks on the value of circumstantial evidence must in his own view have been consistent with the rule which he thus lays down and approves.

In the next place, I proceed to consider the principal cases relied on for the people.

Mr. Justice WASHINGTON, in *United States* v. *Johns.* ( 1 *Wash. C. C. R.*, 363 ), says : "That the prisoner perpetrated the act, or directed or procured it to be done, positive evidence is not necessary. Circumstantial evidence is sufficient, and is often more persuasive to convince the mind of

the existence of a fact than the positive evidence of a wit-
ness, who may be mistaken; whereas a concatenation and
a fitness of many circumstances, made out by different wit-
nesses, can seldom be mistaken or fail to elicit the truth.
But then those circumstances should be strong in themselves,
should each of them tend to throw light upon and to prove
each other, and the result of the whole should be to leave no
doubt upon the mind that the offence has been committed,
and that the accused and no other could be the person who
committed it." The defendant was on trial for casting away
a ship. That auger holes had been found in her bottom,
which nearly sunk her, was proved by pumping her out
and bringing her to port. The whole question of fact was
the personal guilt of the accused. The remarks are just;
indeed they are cited by Judge COWEN with approbation in
the same note before referred to, and are followed by his
statement of the rule, in cases of homicide, as to proof of
the fact of death.

The same remarks are applicable also to Jacobson's case
( 2 *City Hall Recorder*, 131, 143 ), where Mr. Justice LIVING-
STON is reported to have said : " The rule in this court, even
in capital cases, is, that should the circumstances of a case
be sufficient to convince the mind and remove every rational
doubt, the jury is bound to place as much reliance on such
circumstances as on direct and positive proof, for facts and
circumstances cannot lie." This was also in a case of cast-
ing away a ship, and the only question was of the personal
guilt of the defendant. It was no way necessary for the
judge's argument, nor required by fairness to the defendant,
that he should stop to state an exception as to the fact of
death in murder.

In the case of Burdett ( 4 *Barn. & Ald.*, 164 ), the question
was whether a libel had been published in a certain place;
and the observations of the judges are of course to be con-
strued with reference to the point before them. All the
judges speak of the necessity of a resort to presumptive

evidence, and recognize the fact that, even in cases of murder, a great part of the convictions rest upon that sort of evidence to establish the guilt of the accused; but Abbott, Ch. J., only notices that kind of proof in its application to the fact of death. Speaking of the cases of supposed murder mentioned by Lord Hale, which, as he says, have since operated as a caution to all judges, he observes: "In those cases there was no actual proof of the death of the person supposed to have been slain, and consequently no proof that the crime of murder had been committed." From nothing which is said or omitted to be said in that case can it be fairly inferred that any of the judges denied the correctness of the rule stated by Lord Hale. What was said by Mr. Justice Best comes nearest to the purpose for which it was cited on the part of the people. He said: "Until it pleases Providence to give us means beyond those our present faculties afford, of knowing things done in secret, we must act on presumptive proof, or leave the worst crimes unpunished. I admit, where presumption is raised as to the *corpus delicti*, that it ought to be strong and cogent." The *corpus delicti*, in murder, is a compound fact, made up of death as result, and criminal agency of another person as means; and therefore, if he had been speaking of murder, he might have employed this expression without intending to deny the rule that as to one or the other branch of the crime there must be direct evidence. But it was in no way necessary, or conducive to the argument he had in hand, that he should be minutely accurate on the point before us, for, in the case of which he was speaking, the *corpus delicti*, the publication of the libel by the defendant, was admitted, and the presumptive proof which he had sustained related only to the place of publication.

What was said by Mr. Justice Park, in *Rex* v. *Thurtell*, tried for the murder of Weare, which is quoted in the opinion of Mr. Justice Mason, was said in a case where the body of the defendant had been found recently dead, and

Ruloff v. The People.

was intended to answer the address of Thurtell to the jury, which had mainly turned on certain cases which we read, exhibiting the fallibility of circumstantial evidence. (2 *Chron. of Crime, Lond.*, 1841, 85.) It affords no inference that he denied the rule of Lord HALE.

In *United States* v. *Gilbert* (2 *Sumn.*, 27), an indictment for robbery on the high seas, Judge STORY in summing up adverted to certain cases which had been cited to show the danger of relying on presumptive evidence, in capital cases, as sufficient proof of guilt. He says: " They are brought to establish these propositions on trials for murder: 1st. That there ought to be no conviction for murder unless the murdered body is actually found; 2d. That men have been convicted of murder on false testimony. The first proposition certainly cannot be admitted as correct, in point of common reason or of law, unless courts of justice are to establish a positive rule to screen persons from punishment who may be guilty of the most flagitious crimes. In the case of murders on the high seas the body is rarely if ever found, and a more complete encouragement and protection for the worst offences of this sort could not be invented than a rule of this strictness. It would amount to a universal condonation of all murders committed on the high seas." Strong as this language is, I find in it no support for the idea that, in the absence of any direct evidence showing that anybody has been killed, and accounting for the absence of the dead body, it is to be put to a jury to find, according to their belief, that a murder has or has not been committed.

The other cases cited for the prosecution, *People* v. *Thorn* (6 *Law Rep.*, 54), *Commonwealth* v. *Harman* (4 *Barr*, 269), *State* v. *Turner* (1 *Wright Ohio*, 20), and *Commonwealth* v. *Webster* (5 *Cush.*, 310), except that last mentioned, were cases in which the fact of death was clearly established by finding the body; and in Webster's case, the identification of the remains as those of Dr. Parkman was the vital fact on which the success of the prosecution depended.

I proceed to consider briefly what has been written by elementary writers on this subject.

Mr. Starkie ( 1 *Stark. Ev.,* 575 ), under the rule which he lays down, that it is essential that the circumstances should to a moral certainty actually exclude every hypothesis but the one proposed to be proved, says: "Hence results the rule in criminal cases, that the coincidence of circumstances tending to indicate guilt, however strong and numerous they may be, avails nothing, unless the *corpus delicti,* the fact that the crime has been actually perpetrated, be first established. So long as the least doubt exists as to the act, there can be no certainty as to the criminal agent.   Hence, upon charges of homicide, it is an established rule that the accused shall not be convicted unless the death be first distinctly proved either by direct evidence of the fact or by inspection of the body — a rule warranted by melancholy experience of the conviction and execution of supposed offenders, charged with the murder of persons who survived their alleged murderers; as in the case of the uncle, cited by Sir Edward Coke and Lord Hale."

On a subsequent page of the same work, when speaking of the proof of the death of the person specified in the indictment as having been murdered, he says: "It has been laid down by Lord Hale as a rule of prudence in cases of murder, that, to warrant a conviction, proof should be given of the death, by evidence of the fact or the actual finding of the body.   But although it be certain that no conviction ought to take place unless there be most full and decisive evidence as to the death, yet it seems that actual proof of the finding and identifying of the body is not absolutely essential.   And it is evident that to lay down a strict rule to that extent might be productive of the most horrible consequences." ( 2 *Stark. Ev.,* 710. )   Hindmarsh's case is then stated by him, thus illustrating the meaning of the expressions he has just employed, and the allowable exposition of the terms of Lord Hale's rule.

Ruloff *v.* The People.

Having finished the discussion of the proof of the *corpus delicti*, he proceeds: "When it has been clearly established that the crime of willful murder has been perpetrated, the important fact whether the prisoner was the guilty agent is, of course, for the consideration of the jury, under all the circumstances of the case." (*Id.*, 719.) It is in this connection, and with reference, I think, mainly, if not exclusively, to this branch of the inquiry, that he observes that "it is essential to the security of mankind that juries should convict, when they can do so safely and conscientiously, upon circumstantial evidence which excludes all reasonable doubt, and that it should be well known and understood that the secrecy with which crimes are committed will not secure impunity to the criminal." (*Id.*, 720.) Specifying, under this head, among the topics of circumstantial evidence pertinent to the inquiry, the conduct of the prisoner in seeking for opportunities to commit the offence, or in using means to avert suspicion and remove material evidence, he adds: "The case cited by Lord COKE and Lord HALE is a melancholy instance to show how cautiously proof arising by inference from the conduct of the accused is to be received, when it is not satisfactorily proved by other circumstances that a murder has been committed; and even when satisfactory proof has been given of the death, it is still to be recollected that a weak, inexperienced and injudicious person will often, in hope of present relief, have recourse to deceit and misrepresentations." (*Id.*, 720.)

Having explained himself fully as to proof of the *corpus delicti* in another place, it was not necessary, to avoid misconception, for him to inweave that distinction into this passage, and it ought not to be taken to qualify what has been before carefully stated. Indeed, his language, attentively considered, requires no modification, for he distinguishes between the proof of the murder — of both branches of the *corpus delicti* — and proof of the death alone.

In *Russell on Crimes* (*vol.* 1, 473) it is said: "It has been holden as a rule that no person should be convicted of murder, unless the body of the deceased has been found; and a very great judge says: 'I would never convict any per son of murder or manslaughter, unless the fact were proved to be done, or at least the body be found dead.' But this rule, it seems, must be taken with some qualifications; and circumstances may be sufficiently strong to show the fact of the murder, though the body has never been found."

The rule which is thus qualified is that which prohibits a conviction unless the body be found, not the rule stated by Lord HALE. This appears by what immediately follows in illustration, a statement of Hindmarsh's case, which the defendant's counsel admits to be correctly decided. In that case the violent noise which awakened the witness, the blood on the deck and the prisoner's clothes, the billet of wood lying by, and the actual casting into the sea, made a satis- factory case of proof under Lord HALE's rule.

GREENLEAF says (3 *Greenl. Ev.*, § 30): "It is seldom that either the *corpus delicti* or the identity of the prisoner can be proved by direct testimony, and, therefore, the fact may lawfully be established by circumstantial evidence, provided it be satisfactory. Even in the case of homicide, though ordinarily there ought to be the testimony of per- sons who have seen and identified the body, yet this is not indispensably necessary in cases where the proof of death is so strong and intense as to produce the full assurance of moral certainty."

For this proposition, *Wills on Circumstantial Evidence* (157, 162) is referred to, and Hindmarsh's case is cited as an example. Such judicial observations as are referred to, in the places cited in WILLS, were made by judges with refer- ence to the further proofs of crime, after the fact of death had been fully established by direct and unequivocal evidence. The only case cited in which any relaxation of the rule — that the body must be found — has taken place, is Hindmarsh's,

Ruloff *v.* The People.

and that, as we have seen, stands upon satisfactory grounds, there being direct and unequivocal proof of what was done with the man or his body. He proceeds: "But it must not be forgotten that the books furnish deplorable cases of the conviction of innocent persons, from the want of sufficiently certain proofs, either of the *corpus delicti,* or of the identity of the prisoner. It is obvious that, on this point, no precise rule can be laid down, except that the evidence 'ought to be strong and cogent,' and that innocence should be presumed until the case is proved against the prisoner, in all its material circumstances, beyond any reasonable doubt." (3 *Greenl. Ev.,* § 30.)

"The *corpus delicti,* or the fact that a murder has been committed, is so essential to be satisfactorily proved, that Lord HALE advises that no person be convicted of culpable homicide unless the fact were proved to have been done, or at least the body found dead. Without this proof, a conviction would not be warranted, though there were evidence of conduct of the prisoner exhibiting satisfactory indications of guilt. But the fact, as we have already seen, need not be directly proved, it being sufficient if it be established by circumstances so strong and intense as to produce the full assurance of moral certainty." (3 *Greenl. Ev.,* § 131.)

"§ 132. The most positive and satisfactory evidence of the fact of death is the testimony of those who were present when it happened, or who, having been personally acquainted with the deceased in his lifetime, have seen and recognized his body after life was extinct. This evidence seems to be required in the English House of Lords, in claims of peerage, and, *a fortiori,* a less satisfactory measure of proof ought not to be required in a capital trial.

"§ 133. But though it is necessary that the body of the deceased be satisfactorily identified, it is not necessary that this be proved by direct and positive evidence, if the circumstances be such as to leave no reasonable doubt of the

fact. Where only mutilated remains have been found, it ought to be clearly and satisfactorily shown that they. are the remains of a human being, and of one answering to the sex, age and description of the deceased; and the agency of the prisoner in their mutilation, or in producing the appearances found upon them, should be established."

The question will be found further discussed in *Best on Presumptions* (271–276), *Wharton's American Criminal Law* (283–287), *Wills on Circumstantial Evidence* (156–170), and in *Burrill on Circumstantial Evidence* (678–680). The last writer states, as his conclusion, that "the fact of death, when the body cannot be found, may be proved by circumstances. It may be inferred, says Mr. WILLS, from such strong and unequivocal circumstances of presumption as render it morally certain, and leave no ground for reasonable doubt." In illustration, Hindmarsh's case is again referred to, and, it may be assumed, to show what is meant by the expression so constantly used, "such strong and unequivocal circumstances of presumption as render the fact morally certain, and leave no ground for reasonable doubt." He says further : "A dead body or its remains having been discovered and identified as that of the person charged to have been slain, and the basis of a *corpus delicti* being thus fully established, the next step in the process, and the one which serves to complete the proof of the indispensable preliminary fact, is to show that the death has been occasioned by the criminal act or agency of another person. This may always be done by means of circumstantial evidence, including that of the presumptive kind; and for this purpose, a much wider range of inquiry is allowed than in regard to the fundamental fact of death, and all the circumstances of the case, including facts of conduct on the part of the accused, may be taken into consideration. (*Burr. on Cir. Ev.*, 682 ; *Best on Presum.*, § 205; *Wills' Cir. Ev.*, 168.)

If what is said by these writers is to be taken as intimating their opinion that Lord HALE's rule may be departed

Matter of the Empire City Bank.

from, I find no judicial authority warranting the departure. The rule is not founded in a denial of the force of circumstantial evidence, but in the danger of allowing any but unequivocal and certain proof that some one is dead to be the ground on which, by the interpretation of circumstances of suspicion, an accused person is to be convicted of murder.

We are of opinion that the judge, at the trial, erred, and that he should have directed an acquittal.

ROOSEVELT, J., dissented.

Judgment reversed and new trial ordered.