# THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, v. FRANK PALMER, APPELLANT.

*Penal Code, sec. 181, as amended by chapter 384 of 1882 — what facts do not establish the death of a person alleged to have been killed, by "direct proof."*

Upon the trial of the defendant, under an indictment for the murder of one Peter Bernard, at the town of Dannemora, August 10, 1885, evidence was given showing that the dead body of a man was found near Dannemora, September 29, 1885; the body was clothed, the lower part being covered up with dirt, leaves, moss, branches and wood placed upon it. The skull was bare, no scalp upon it, and was detached from the body. The flesh on the face and arms and upper part of the chest was gone. No person on the trial identified the body as that of Peter Bernard by anything in the body itself, but evidence was given tending to show that the clothing, hat, boots and watch found on or near the body, and a valise found near it, were those of Peter Bernard. There was no evidence to show that the body had been mutilated, the condition in which it was, when found, being the result of natural decay.

*Held,* that the death of the person alleged to have been killed, viz., Peter Bernard, was not established as an independant fact "by direct proof," as required by section 181 of the Penal Code, as amended by chapter 384 of 1882, and that a judgment convicting the defendant of murder in the second degree should be reversed.

APPEAL from a judgment of a Court of Oyer and Terminer of Clinton county, entered upon the verdict of a jury finding the defendant guilty of murder in the second degree and sentencing

him to be confined at hard labor at the State prison for the rest of his natural life.

*William H. Dunn*, district attorney, and *Royal Corbin*, for the appellant.

*Lucian L. Shedden*, and *John B. Riley*, for the respondent.

LEARNED, P. J.:

The Penal Code (chap. 676 Laws 1881, § 181) declared: "No person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed and the fact of killing by the defendant are each established as independent facts beyond a reasonable doubt."

The next year it had evidently been discovered by some one that this section altered the well-known principle of law, recognized in the *Ruloff Case* (18 N. Y., 179). And the legislature attempted to improve the statute by amending that section so that it read as follows: "No person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed and the fact of killing by the defendant as alleged are each established as independent facts; the former by *direct proof* and the latter beyond a reasonable doubt." (Chap. 384 Laws of 1882.) The danger of putting into the form of a statute rules which have been adopted only by sound judicial discretion appears from the question which arises in the present case.

The prisoner was indicted for the murder of one Peter Bernard, at the town of Dannemora, August 10, 1885. The dead body of a man was found near Dannemora, September 29, 1885. Clothing was on it, and the lower part of the body was well covered up with dirt, leaves and moss, branches and wood placed upon it. The skull was bare and detached from the body; no scalp upon it. The flesh on the face and arms and upper part of the chest was gone. No person on the trial identified the body as that of Peter Bernard by anything in the body itself. Evidence was given tending to show that the clothing, the hat, boots and watch found on or near the body and a valise found near were those of Peter Bernard.

There is no evidence that the person who killed this man (assuming that he was killed by violence) committed any mutilation of the

body. The condition of the body above mentioned was the result of natural decay.

The prisoner was convicted of murder in the second degree. And the question now presented is, whether "the death of the person alleged to have been killed," viz., Peter Bernard, was established as 'an independent fact by *direct proof*. This point was properly raised on the trial by defendant's counsel.

There was undoubtedly direct proof of the death of some one. Was there direct proof of the death of Peter Bernard as a fact, independent of the prisoner's acts?

Many of the cases and authorities on this point are cited in the Ruloff case. And, on looking at them, it will be seen that the question has not always been carefully considered whether not only the existence of a dead body, but its identification with that of the person alleged to have been killed, must be shown by direct proof. But the language seems generally to imply that both are necessary.

Thus, Lord HALE : " Never to convict, etc., unless  *  *  *  the body found be dead." Not a body. (2 Hall, P. C., 290 ; quoted by Blackstone, 4 Commentaries, 358.) Again (*People* v. *Videto*, 1 Park. Crim., 609): " Unless the body of the person supposed to have been murdered has been found."

In the *Webster Case* (5 Cush., 314) the court, after stating that evidence had been given showing that the shape, size, etc., of *the* body, parts of which were found, corresponded with those of Dr. Parkman, remarked that this " proof would be equivocal and fail in the character of conclusiveness upon the point of identity." The court then spoke of the teeth found in the furnace, and the evidence that they were the identical teeth fitted for Dr. Parkman, and said " if this latter fact is satisfactorily proved  *  *  *  this would be a coincidence of a conclusive nature to prove  *  *  *  the fact of identity."

In the Ruloff case there was no direct proof of any dead body, and therefore the question now before us was not involved.

In Greenleaf's Evidence (§ 132) it is said that recognition of the body by those who have been personally acquainted with the deceased in his lifetime seems to be required in the English House of Lords in claims of peerage, and that a less satisfactory measure of proof ought not to be required in a capital trial. But the next section contra-

dicts this and says, that identification need not be proved by direct and positive evidence. The authority cited for this is Wills on Circumstantial Evidence (chap. 7, § 3, sub. 2), which says that it is not necessary that the remains should be identified by direct and positive evidence where such proof is impracticable, and especially if it has been rendered so by the act of the party accused. And this qualification as to the agency of the prisoner in mutilating the body should be established. No case, however, seems to be cited by either writer, in which there has not been some direct evidence of identification of the body itself, unless it be a case in which the person accused has mutilated the remains. So that even before the enactment of the statute above cited, it would seem that direct proof has been required of some points of resemblance between the body found and that of the deceased, in order to establish identity. And, indeed, if the general principle which is recognized in the Ruloff case was of any usefulness, not only a body must have been found, but its identity with that of the person alleged to have been murdered must have been established by proof of equal weight. Otherwise, any dead body might be found and then circumstantial evidence might be given that such body was that of the person alleged to have been murdered.

But whatever may have been the old rule, we are now to apply the provisions of the Penal Code above cited. And there must be direct proof of the death of the person alleged to have been killed. In a case recently before this court (*People* v. *Beckwith*, 45 Hun, 422), it was thought (although the point was not really involved) that there were enough particulars in which the remains found resembled the body of Vandercook to bring the case within the words "direct proof." And this was the more certain because the proof was unquestionable, that the prisoner had mutilated the remains. Thus the case came within the qualification above cited from Greenleaf and from Wills. But the question we now have to consider is whether, in a case where there has been no mutilation, evidence in regard to to the apparel and articles found on or near to the body, constitute *direct* evidence of identification. Greenleaf (vol. 1, § 13), defines direct evidence as being when the thing to be proved is directly attested by those who speak from their own actual and personal knowledge of its existence; circumstantial when the thing to be proved is to be inferred from other

facts satisfactorily proved. (See, also, Wills on Cir. Ev., chap. 2, § 1; Powell's Ev., chap. 5.) And, further, to illustrate the meaning of the word "direct" we may refer to the doctrine, often stated, that it is not necessary to prove the fact of adultery by direct evidence, but that it may be proved by circumstances. (2 Hagg. Const. Rep., 2.) It is well understood what direct evidence is in that case. And we must suppose that the legislature used the word direct in its accepted meaning. Now, the thing to be proved in the present case was that the dead body found was that of Peter Bernard. Direct proof would have been the testimony of a witness who knew Bernard in his lifetime and who would testify that that body was the body of Bernard. Perhaps, too, it would be direct evidence for a witness to testify in his belief that this was the body of Bernard from peculiarities with which he had been familiar. Such testimony would seem to be direct, although less strong than a positive identification. But the testimony in this case is that a satchel found near the body looked like one which Bernard had; that a boot on the dead body is one of a pair made for Bernard; that an almanac found in the satchel is one Bernard had; that a watch-chain found on the body resembled one he wore. Now, from these facts satisfactorily proved, it is inferred that the body on or near which these articles were found is the body of Bernard. The question for us is not whether this evidence is not very strong or even convincing beyond a reasonable doubt. The question is whether it is such as the law calls "direct." It has often been urged that circumstantial evidence is more satisfactory than direct; because it is said there is less danger of false testimony. But, however that may be, our inquiry is not as to the weight, but as to the character of this evidence.

Now it is a circumstance tending to show that the dead body was that of Bernard, when it was proved that Bernard's satchel lay near and Bernard's clothes were on the body; because we should infer if a dead body is found unburied, in a solitary place, the clothes on it would probably be those the person had worn in his lifetime. That a person has my clothing on is only a circumstance tending to the inference that I am that person. In some cases the inference may be strong; in others slight. And an accumulation of similiar circumstances might be evidence beyond a reasonable doubt. But this evidence is circumstantial, and the legislature have chosen to

require something else, viz., direct proof. And that requirement cannot be satisfied by circumstantal evidence. It may be that this statute will in some cases prevent the conviction of the guilty person. But that possible result does not authorize us to disregard it. The rule, as it existed before this legislation, was wise; and in the discretion of courts it would seldom cause a failure of justice. It may be remarked, however, that this statute would not prevent a conviction in every case where a body could not be found. In the case often cited, where on shipboard at sea a person strikes another a deadly blow and knocks him overboard; and the ship sails on, that probably would be, as has been substantially held, direct proof of the death of the person, although his body could not be found. (*Hindmarsh's Case*, 2 Leach Crown Cases, 569.) It is urged by the people that this construction makes it as important to establish the correct name as the killing. But the point is not exactly one as to the name of the person. The necessity of identification is to connect the prisoner's acts with the dead body found. That was attempted in this case by showing that the prisoner was in company with Bernard, and by similar proof. If the person found dead had no name (as in case of a newly born infant), or the name was not known, then the connection of the prisoner with the killing would have to be shown in another way. But in this case the evidence which connected the prisoner with the dead body was only evidence connecting him with Bernard. Hence the necessity of showing that this dead body was that of Bernard.

The learned justice, in commenting on the statute, fell into an inaccuracy. He stated that the killing must be established by direct proof. It is not the killing, but the death. He further stated that the evidence of some person who saw the killing might be accepted without producing the body or identifying it. He seems to have intended to refer to such cases as that of Hindmarsh. He then proceeded to say that in this case there must be other circumstances "that lead to a moral conviction, to a certainty that it was the body of Peter Bernard." Subsequently the defendant asked the court to charge that the death of the person killed must be established by direct proof, and not by circumstantial evidence. And the court refused to charge differently from what had been stated in the charge. The learned justice had not charged that such death

must be established by direct proof. And he declined to charge that there was no direct proof that the deceased person was the person alleged to have been killed. Certainly the defendant was entitled to have the jury informed that the death of the person must be established by direct proof. Whether the learned justice meant that direct proof was not necessary, or that some direct proof had been given is not quite clear. The statute expressly states that direct proof is necessary. In the view we have above expressed, such proof was not given.

It may be worth while to notice that some evidence was given (as to the weight of which we say nothing) tending to show that Peter Bernard had been seen alive after the time when he is charged to have been killed.

The judgment and conviction should be reversed, and a new trial granted.

WILLIAMS, J., concurred.

LANDON, J. :

I concur. The case is barren of direct testimony tending to establish the identity of the dead body as that of Peter Bernard. Identity of clothing and of articles upon or near the dead body is not identity of the dead body. The proof of the former affords presumption, but not direct evidence of the latter. Because the clothing and articles upon or near the dead body are Bernard's, therefore the body is his, is a mere presumption; because the collateral facts exist, therefore the facts sought exist. This is not direct evidence of the fact sought, and however allowable at common law, does not satisfy our Penal Code.

In Beckwith's Case (45 Hun, 422), although the head of the dead body was missing, the witnesses testified to striking particulars wherein the dead body and Vandercook, the person alleged to have been killed, were identical. This was direct evidence tending to show identity; and if the direct evidence tending to show identity is cumulative and cogent enough to convince the mind, then the statute is satisfied. In such a case evidence of the collateral fact of identity of clothing and of articles upon or near the dead body might, I think, be admissible, in order to instruct the jury with what confidence they may be guided by the direct evidence of the identity

of the body; but under the Penal Code, while it may supplement, it cannot suffice as an entire substitute for direct evidence of identity.

Judgment of conviction and sentence reversed, and new trial granted.