LEFTRIDGE VS UNITED STATES.

Opinion delivered November 24, 1906.

(97 S. W. Rep. 1018).

1. *Homicide—Corpus Delicti, Proof of, Question for Jury—How Far Confession of Accused is Proof.*

In a trial for murder it appeared in evidence that the two men alleged to have been killed left their home with certain property; that their relatives received a letter from each of them mailed at a post office near the place where they were last seen or heard of. That more than two years elapsed before any discovery was made as to what had become of them. Appellant and one Butler was arrested for the murder and the latter voluntarily made a confession that the two men had been murdered by them and gave a description of the property taken from the deceased, and its division by them, and where the same could be found. That the property was discovered and fully identified by relatives of the deceased. The bodies of the deceased, as stated in the confession, were sunk in Red River and never recovered. One witness testified that he was at the camp of the deceased on the evening they were last seen and while there the appellant and the said Butler came up. Witness left them at the camp and afterward heard shots fired in the direction of the camp. Shortly thereafter witness saw appellant with a shot gun that he recognized as being in the possession of the deceased, and after that appellant and Butler came to him and cautioned him about talking about the gun. *Held,* While proof of the corpus delicti is still insisted upon as an essential part of the case, no particular emphasis is laid upon its being established by direct and positive evidence, and circumstantial evidence if strong and unequivocal, is sufficient. The confession of defendant, without corroborative proof is however insufficient to establish same, and proof that the crime has been committed by some one is necessarily corroborative of a confession by the defendant. Therefore instructions of court in accordance with above not error and

such facts as above stated constituted sufficient proof of the corpus delicti to go to jury.

2.  *Jurisdiction of United States Court in Indian Territory—Citizenship.*

When the United States Court in Indian Territory had no jurisdiction over offences between Indians the proof that one of the deceased was a citizen of the Choctaw Nation, the other a citizen of the United States and the appellant a negro and non-citizen of the Choctaw Nation, such diverse citizenship is sufficient to give the United States Court jurisdiction.

3.  *Criminal Law—Indictment—Indorsement of Witnesses On—What Law Applies With Reference Thereto.*

Rev. St. U. S. Art. 1033 (U. S. Comp. St. 1901, p 722) provides that when a person is indicted for a capital offense, a copy of the indictment and list of witnesses shall be delivered to him at least two days before the trial. *Held;* That as Art. 2103 Mansf. Dig. provides that when an indictment is found, the names of all witnesses who were examined must be written at the foot or on the indictment, is in force in the Indian Territory, a compliance therewith is sufficient and said Sec. 1033 is not applicable.

4.  *Other Indictment—Evidence Of.*

If the evidence of the pendency of another indictment is material, the record of same is the best evidence, and it is not error to sustain an objection to oral testimony of same.

Appeal from the United States Court for the Central District of the Indian Territory; before Justice W. H. H. Clayton, September 20, 1901.

Henry Leftridge was convicted of murder, and he appeals. Affirmed.

On April 7, 1899, two indictments were returned against the defendant and one Lemon Butler. The first one charged both said defendants with the murder of one Joshua Crowder on the 8th day of December, 1896; the second one charged both said defendants with the murder of one James Johnson on the

8th day of December, 1896. On April 12, 1899, said defendants were arraigned, and pleaded not guilty in both said cases, and on same day said cases were continued. On April 6, 1900, defendants filed motions for change of venue. On April 7, 1900, the motions for change of venue were sustained, and venue changed to Atoka. There is copied in the trancsript of the record both of said indictments, wth the following certificate of the clerk at Antlers: "I hereby certify that the within is a true and correct copy of the original. E. J. Fannin, Clerk, by Thos. B. Latham, Dept." It appears that the original indictments were also transferred by the clerk at Antlers to the clerk at Atoka, and the verdicts of the jury appear to have been entered on the back of the said original indictments instead of on the certified copies.

This cause came on for trial, the United States appearing by its attorney, J. H. Wilkins, Esq., and the defendant Henry Leftridge, in custody of the marshal and by his attorney, J. G. Ralls, Esq., and the death of the defendant Lemon Butler being suggested to the court, it is ordered that this cause be abated as to him the said Lemon Butler, and by permission of the court and agreement of counsel the cases were consolidated, and the defendant Leftridge was tried before a jury, and on September 15, 1900, the following verdict was returned: "We, the jury, duly empaneled and sworn in the above-entitled action, do find from the law and the evidence the within-named defendant, Henry Leftridge, guilty in manner and form as charged in the within indictment without capital punishment. Horatio Veach, Foreman." On September 20th defendant filed motions in arrest of judgment and for new trial, which were both overruled by the court, and the court rendered judgment upon the verdict, to all of which defendant excepted, and appealed to this court.

*Joseph G. Ralls,* for appellant.

*J. H. Wilkins,* for appellee.

TOWNSEND, J. (after stating the facts). The appellant has filed eleven assignments of error, but in his argument confines himself to the discussion of two only. The fourth assignment of error is as follows: "(4) The court erred in refusing to instruct the jury to return verdicts of not guilty in each case, to which action of the court the defendant excepted."

Appellant insists that a verdict of not guilty should have been directed, for the reason that there is no evidence in the case proving or tending to prove that either Joshua Crowder or James Johnson were killed or are dead; then says "There is no case reported where a conviction for homicide has been sustained unless the body, or some portion thereof, was found, except in cases where the evidence showed that a murder had been committed and that the body had been destroyed, or had been cast overboard on the high seas. And even in cases where the body had been cast overboard, the courts have required the prosecution to show that there were no vessels near that might have picked up the person, unless the evidence showed that the alleged deceased was murdered before he was cast overboard. In all cases of the kind, positive proof of the corpus delicti has been required."

Appellant insists that while Mr. McClain, in section 396, states "that the corpus delicti may be proved by circumstantial evidence, he does not in fact mean what he says; if he does, he shows his ignorance of the rules of criminal evidence," and cites authorities to sustain his contention that positive proof of the corpus delicti in all cases has been required.

In this case the defendant (appellant) made a voluntary confession of the commission of the crime, as follows:

"About the middle of December, 1896, Lemon and Sam and I went to where two trappers were camped on the river, near the head of the Murray lake. We stayed there about an hour. Sam and Lemon both had Winchesters. Just at sun down Lemon shot at and missed one of them. He, the trapper started to run, and Lemon then shot him in the back, and he fell and died, and Lemon ran up to him and shot him the third time. Just after Lemon shot one of the trappers, Sam shot the other one in the back, and he fell over dead, and then he, Sam, shot him again and he died. After both were dead, we then searched the bodies of the two dead trappers. We found and took seventeen dollars. The oldest man had all the money, ten dollars and five-dollar bill and two dollars silver. From the youngest man we got a gold-cased watch. One thirty-eight carbine Winchester, one No. 10 breechloading shotgun, one feather bed, one mattress, two blankets, one ax, about two dozen unloaded shells, capped, about one dozen thirty-eight cartridges, one pocket knife, about two dozen coon and wildcat hides, one pocketbook, two grips, one pair pants, one overcoat, four common shirts. Sam took one grip and part of the money, two blankets, part of the coon skins, two shirts; Lemon took one grip, part of the money, the watch, one thirty-eight Winchester, the feather bed and mattress, the cartridges, pocket knife, part of the coon skins, pocketbook, pants, overcoat, two shirts; and I got the breechloading shotgun and shells, and the next morning Lemon Butler took Isaac Cole up there and gave him the ax. We three, Lemon, Sam, and myself, took the dead men to the boat. Sam and I took the dead men by their arms, and Lemon by their feet, and we carried them both in that way and put them in their boat. I

stayed on the bank, and they rowed the boat to about the middle of the river, and they throwed them, the dead men, in the river.

his

"M. H. X Leftridge,

mark

"Sworn to and subscribed before me this February 28th, '99.

"W. C. Harris, Notary Public.

"Witness:

H. C. Harris,

W. J. Whiteman,

W. A. Coleman."

The witness who wrote the confession testified that the same was freely made, but counsel for appellant insists that the same should not have been admitted until there was sufficient proof of the corpus delicti, and that the corpus delicti could only be established by positive proof, and could not be established by circumstantial evidence. The court, in his instructions to the jury on the subject, stated: "Now, in regard to confessions, the court instructs you that confessions, when freely and voluntarily made, without any threats being made against the party, or inducements offered to him to make the confession, is competent proof before you; that is, competent evidence to be taken into consideration by you. First, however, you must determine that the confessions were made; that should be established clearly and beyond a reasonable doubt—that the defendant absolutely made the confessions which have been introduced in evidence before you. Were they made? Where they reduced to writing? You have got to depend upon the credibility of the witnesses to determine that. If you believe that fact is established beyond a reasonable doubt—that they were made freely and voluntarily by him—then they become evidence in the case against him. You take them and give to the confession such credence as you think they are entitled to.

The court tells you that confessions alone are not sufficient upon which to convict a defendant. There must be other proof of the corpus delicti. There must be other proof that the offense was committed, and there ought to be other proof of his participation in the offense. But that other proof need not be the testimony of an eyewitness to the transaction, The proof necessary to corroborate him may be circumstantial evidence, as well as the direct proof of a party who was there. In this case, for the purpose of ascertaining whether or not the men are dead, and whether or not an offense was committed upon that occasion, whether or not the men were actually murdered, the court tells you that you must find some other evidence outside of the confession, some facts and circumstances corroborative of his confession. If in this case you find that there is other evidence before you, in addition to the confession, tending to prove, tending to show, that these men were killed, and that they came to their death by the hands of violence, that an offense was committed, then the court instructs you that you may take the confession of the defendant, together with the other evidence that you have before you of the fact that an offense was committed, for the purpose of establishing it. It is not necessary, in other words, that you shall be satisfied absolutely, to a high degree of certainty, or even beyond a reasonable doubt, that this crime was committed, independently of the confession; but if you find other evidence tending to show, tending to establish the fact, that a crime was committed, and that the men are dead, if there be proof before you of this fact, independent of the confession—I do not mean trifling evidence innuendo—but I mean proof that is real proof of the fact, that these parties are dead and that an offense was committed, and they were killed, if you have other evidence, I say, outside of the confession, then you may tack the confession to the other evidence, and from the whole determine whether or not the parties were killed, whether or not a crime was committed, and

whether or not the defendant participated in the crime." It appeared in evidence that the men alleged to have been killed by the appellant left their homes with certain property, including tent, certain wearing apparel, bedding, two guns, watch, etc.; that their respective relatives received a letter fro .. each of them, mailed at a post office in Texas near where they were last seen or heard of. The indictments charge that on December 8, 1896, Joshua Crowder and James Johnson were killed by the appellant and one Lemon Butler. It appears that more than two years elapsed before any discovery was made as to what had become of them. The appellant and said Butler were arrested, and appellant voluntarily made a confession that the two men had been murdered by them, and gave the items of property that were taken from the deceased, and its division by them, and where the same could be found. Thereupon the property of the deceased was recovered and fully identified by the relatives of the deceased. The bodies of the deceased, as stated in the confession, were sunk in Red river, and were never recovered. One witness testified that he was at the camp of the deceased on the evening that they were last seen, and while there the appellant and said Butler came up. Witness left them at the camp when he went home, which was some three-quarters of a mile distant. After arriving home he heard several shots fired in the direction of the camp. Shortly after that witness saw appellant with a shot gun that he recognized as being in the possession of the deceased, and after that appellant and Butler came to witness and cautioned him against talking about that gun. The foregoing is substantially the evidence disclosed at the trial in addition to the confession. Appellant's contention is that as there was no positive evidence of the killing, and no recovery of the bodies, that the corpus delicti has not been sufficiently proven, and that the court erred in admitting the confession of appellant; that is, that the corpus delicti cannot be proven by circumstantial evidence.

In McClain on Criminal Law, vol. 1, § 396, it is said: "There is nothing peculiar to crimes of homicide in the rule that the fact of the commission of the crime must be proven but in homicide cases the rule requiring proof of the corpus delicti has been especially insisted upon. The earlier statement of the rule in these cases seems to have involved the necessity of direct and positive proof of the death of the alleged deceased. But this strict statement of the rule has been much questioned, and later authorities have modified it, so that, while proof of the corpus delicti is still insisted upon as an essential part of the case, no particular emphasis is laid upon its being established by direct and positive evidence, and circumstantial evidence is, by the decided preponderance of authority, sufficient to establish the corpus delicti if it is strong and unequivocal. There are some cases where the body of the deceased cannot possibly be produced or identified, as where it is destroyed by fire or thrown overboard at sea, and circumstantial evidence alone can be relied on." And in section 398 it is said: "In proving the corpus delicti it is essential that the proof correspond with the indictment as to the identity of the person charged to have been killed. But it is not necessary to have an express identification of the body where the circumstances are sufficient to establish such identity. The jury may, in determining the identity, consider the entire evidence and the attendant circumstances. It is not essential that the body of the deceased be found."

In Underhill on Criminal Evidence, page 10, § 7, it is said: "The rule seems at one time to have prevailed that a conviction could not be sustained, at least so far as a charge of homicide was concerned, unless the corpus delicti was proved by direct evidence, which in such case necessitated the finding of the victim's body. As an objection of considerable force it has been urged that this rule offers a premium on homicide by

proclaiming to assassins that they will be sase from punishment if they shall succeed in utterly destroying the corpses of their victims by fire or chemicals, or by sinking them to a great depth in the ocean, so that they cannot be identified by direct evidence.     There are very many cases which do not require such direct and strict proof of the corpus delicti, but allow it to be proved by circumstantial evidence, if that is sufficiently clear and cogent to convince the jury beyond a reasonable doubt, in connection with the other evidence."

In Campbell vs The People, 159 Ill. 9, 42 N. E. 123, 50 Am. St. Rep. 134, counsel for plaintiff in error made the same contention as is made by counsel for appellant in this case. In that case "counsel for plaintiff in error contends, in the first place, that, if it be taken as true that the accused did all that the prosecuting witness testified that he did do, the conviction must fail for lack of sufficient proof of the corpus delicti.     It has been said that in murder the corpus delicti consists of two elements, viz., the fact of death, and the criminal agency of another as the cause of the death.     Ruloff vs People, 18 N. Y. 179; 4 Am. & Eng. Ency. of Law, 309.   Counsel concedes that the identity of the deceased and of the accused may be proved by circumstantial evidence, or that, when the fact of the death of the person alleged to have been murdered is properly established, the criminal agency of the accused may be shown by any competent evidence, whether direct or circumstantial; but it is insisted that the fact of death must be established by direct or positive evidence, and cannot be established by indirect or circumstantial evidence. It is contended that this was the rule at common law, and is therefore the rule in this state.     It is conceded on behalf of the people that this was the general rule at common law, but it is insisted that the rule was subject to exceptions, and that the rule itself has been modified and changed by the latter authorities, and that now,

by the great weight of modern authority, it is established that the corpus delicti may be proved, like any other fact, by presumptive or circumstantial evidence." And the court, after citing a number of cases sustaining the rule contended for by the counsel for plaintiff in error, as declared in the case of Ruloff vs People, 18 N. Y. 179, say: "We are satisfied that the strict rule contended for by plaintiff in error has been modified by many authorities, and that the weight of authority now is that all of the elements of the corpus delicti may be proved by presumptive or circumstantial evidence. It was said by Jeremy Bentham that, 'were it not so, a murderer, to secure himself with impunity, would have no more to do but to consume or decompose the body by fire, by lime, or by any other of the known chemical menstrua, or to sink it in an unfathomable part of the sea.' 3 Smith on Judicial Evidence, 234. In King vs Burdett, 4 Barn. & Ald. 95 (6th Eng. Com. L. 358), Best, J., said, in speaking of circumstantial evidence: 'Until it pleases Providence to give us means, beyond those our present facilities afford, of knowing things done in secret, we must act on presumptive proof or leave the worst crimes unpunished.' " The court, after quoting the note to State vs Williams, 78 Am. Dec. 248, as follows: "Direct and positive evidence is unnecessary to prove the corpus delicti.     *     * It may be proved by circumstantial evidence, if it be strong and cogent, and leave no room for reasonable doubt.     *     * This rule is now clearly established, and it would be unreasonable to always require direct and positive evidence. Crimes, especially those of the worst kind, are naturally committed at chosen times, in darkness and secrecy. Human tribunals must therefore act upon such indications as the circumstances of the case present or admit, or society must be broken up. The cases just cited show that the jury may find a verdict of guilty upon circumstantial evidence, and that the corpus delicti may be proved by such evidence, as well as any other

part of the case, and that this rule applies in cases of murder and manslaughter as well as in all other crimes"—say, "To this general statement of the law we assent."

In Kerr on the Law of Homicide, p. 540, the author says: "The general rule, however, is that the corpus delicti, taken as a whole, may be shown by any evidence which satisfies the jury beyond a reasonable doubt, whether it be direct or circumstantial; but this is qualified and limited by the rule that the defendant's confession, taken alone and without corroborating proof of the corpus delicti, is not sufficient to support a conviction."

In Wills on Circumstantial Evidence, discussing the proof of the corpus delicti to support a confession, it is said: "But full proof of the body of the crime is not required. All that can be required is that there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction of the defendant's guilt in the mind of the jury. Very slight corroborating circumstances have been held sufficient. Proof that the crime has been committed by some one is necessarily corroborative of a confession by the defendant that he committed the crime. A great variety of facts usually attends, or is incidentally connected with, the commission of every crime. Proof of any number of these facts and circumstances, consistent with the truth of the confessions or which the confession has led to the discovery of, and which would not probably have existed had the crime not been committed, necessarily corroborate it, and increase the probability of its truth. The corroboration is sufficient even if the corroborating circumstances are capable of innocent construction, and the confession alone furnishes the key."

In Greenleaf on Evidence, vol. 3, § 131, it is said: "But the fact, as we have already seen, need not be directly proved;

it being sufficient if it be established by circumstances so strong and intense as to produce the full assurance of moral certainty."

In State vs Lamb, 28 Mo. 218, 232, cited in note on page 672, 1 Bishop on Criminal Procedure, Scott, J., said: "We consider the true rule, as deduced from the current of authorities, to be that an extrajudicial confession, with extrinsic circumstantial evidence satisfying the minds of a jury beyond a reasonable doubt that the crime has been committed, will warrant a conviction, although the dead body has not been discovered and seen, so that its existence and identity can be testified to by an eyewitness."

The court, in our judgment, correctly stated the law in his instructions to the jury on this subject.

The appellant, for another reason why the court should have directed a verdict, insists that because the indictment charged that Johnson and Crowder were both citizens of the United States, and made no allegation as to the citizenship of the appellant, the court therefore was without jurisdiction. The court, in his instructions to the jury, submitted to them the following: "It must be shown in the evidence that either the deceased or the defendant is a noncitizen of the Choctaw Nation; this crime having been committed, if committed at all, at a time when this court had no jurisdiction of offense between Indians. So you will find that issue." The proof was that Crowder was a citizen of the Choctaw Nation, Johnson a citizen of the United States, and the appellant a negro and a noncitizen of the Choctaw Nation. This diverse citizenship gives the United States Court jurisdiction.

Under the first assignment of error, which is as follows: "(1) The court erred in overruling the objections of the de-

fendant to the evidence offered by the prosecution, which evidence was introduced, and to which the defendant excepted"— the appellant insists that a witness was permitted to testify whose name was not on the indictment, and that in permitting said witness to testify the court committed an error for which the case should be reversed. Section 2103, Mansfield's Digest, is as follows: "When an indictment is found, the names of all witnesses who were examined must be written at the foot of or on the indictment." This statute was complied with, and, as the Arkansas procedure is in force in this jurisdiction, it is our judgment that section 1033, Rev. St. U. S. (U. S. Comp. St. 1901, p. 722), is not applicable.

The second assignment of error was the refusal of the court, upon the objection of counsel for the government, to allow M. W. Johnson to testify that Crowder was under indictment in the Choctaw Court. If this evidence was material for the appellant, the record would have been the best evidence, and the court very properly sustained the objection to the admission of the testimony of Johnson.

All of the other assignments of error refer to the authorities and argument presented by appellant to the fourth and first assignments, which have been considered. We have examined the record with much care, and cannot find that the trial court committed any error in the admission and exclusion of evidence, or in giving or refusing instructions to the jury.

Complaint is made by plaintiff in error of the ruling of the court respecting the instructions, but we find no error in this respect. The instructions applicable to both sides of the case were full, and unusually free from error.

It is our opinion that the case was fully and fairly submitted to the jury, that the defendant had a fair trial, that the

evidence fully supported the verdict, and that the judgment of the court below should be, and it is hereby, affirmed.

GILL, C. J., and LAWRENCE, J., concur.